Good morning. Before we get to the normal announcements, a motion was filed by the state appellate defender seeking to provide us with additional authority. We're going to allow the motion. And I assume you served a copy of it on your opponent, so feel free to do that. Each side will have 15 minutes. I would advise the appellant to save a few minutes for rebuttal. We're not strict clock watchers, but try to watch your time. If you're going on too long, I will ask you to wrap up. Get to your strongest argument first, as you know, because we've read all the materials and don't want to waste time recovering ground that you don't need to. And whenever you're ready. When you step up, another thing, this is not a microphone. It's a recording device, so keep your voice up and say your name and who you represent. Good morning, Your Honors. My name is Emily Philppe, and I represent James Lenoir in this matter. I'd like to reserve three minutes for rebuttal. For 13 years, James Lenoir has consistently maintained that he was physically tortured by Area 4 detectives. In a successive false conviction petition, Lenoir relied on the Egan torture report to support his claims that he was tortured and that this torture was covered up by lead detectives. At this point, all we're asking for is for this court to allow Lenoir's successive petition to be filed. We're not asking for an evidentiary hearing. We're not asking for a new trial. Just let Lenoir be allowed to file his petition and receive an attorney to examine his claims in light of the fact that he was tortured by Area 4 detectives. Again, Lenoir was in a maximum security prison. He was 18 at the time of his arrest, and he alleged in his affidavit that he did not come into possession of this report until May 22, 2013. That's after his first false conviction petition had been filed and dismissed, and he then filed the instant petition just over two months later. At this point, we have to take his claims as true, his allegations as true, and this fact is what establishes the cause. He alleged that he was tortured after his arrest. He alleged that he was cuffed so tightly that it cut off his circulation, that he was hit repeatedly with a phone book, that he was denied food, and that his clothes, his shirt and pants were taken from him. And this has been consistent. He alleged this in the motion to suppress, in his first post-conviction petition, in a pro se PLA after the denial of his first post-conviction petition, in a habeas petition, and now in this successive petition. But this is the first time that he has the report to append to his petition to support his claims. Again, he couldn't have filed this before he had. In respect to the allegations, did he specifically allege who had done that? It seems like he alleged the taking of the clothes by one person and the hitting with the phone book by another. Can you speak to that? Yes. In his motion to suppress, which again was written by counsel, he alleged that Detective McDermott had put him in the cell and cuffed him super tightly. At the motion to suppress, it came out that he was put in the cell actually by Flaherty. Since then, he has maintained that Flaherty was the one that cuffed him. But this is important to look at his allegation in the first post-conviction petition. In his petition, he argued that trial counsel was ineffective for failing to thoroughly investigate these allegations of torture, because counsel prevented him from testifying at the motion to suppress to clear up this factual inaccuracy. In every post-conviction petition that he has gotten a chance to file, he has alleged that Flaherty was the one that cuffed him so tightly that it cut off circulation, that he was repeatedly hit with a phone book by an unknown detective, and at this point that man's name is unknown, and he was denied food and that his clothes were taken from him. Remorse claims have been corroborated by the methods of abuse and by the players involved. In terms of methods, being struck with a phone book is similar to the allegations made in the Burge report and in other cases, like Holmes and Tillman. Beating about the body is a tactic commonly used by Burge's officers to avoid visual evidence of the abuse. This is also seen in the report, where it discusses striking with a newspaper to avoid visual marks. And he knows who handcuffed him, but he doesn't know the name of the individual that allegedly beat him with the phone book. Correct, Your Honor. And that is why it's important that an attorney be appointed to look into his allegations and to do some investigation. And maybe they'll be able to figure out who this detective was that did actually beat him about the body with the phone book. But at this point it's unknown, and like I said, he alleged trial counsel was ineffective for failing to look into this. At the time of the motion to suppress, the torture report hadn't been released. At the time, we didn't want to believe that this sort of widespread violence was going on. What was the gist of what he argued in this motion to suppress? What was his argument? His argument that his statements were involuntary. I'm trying to get to the detail of what he said then versus what he is saying now. What was the gist of his argument in that motion? That he was handcuffed so tightly that it cut off circulation. That his clothes were taken from him. That he was denied food and that he was hit repeatedly with a phone book. And those acts of abuse are the same exact acts that he is still alleging 13 years later in this motion for leave to file a successive post-conviction petition. The only difference is that in the motion to suppress, which was written and filed by counsel, not Lamar, it was alleged that McDermott was the one that cuffed him. Since the evidence came out in the motion to suppress that McDermott was not there and did not cuff him. But what evidence was there that McDermott, was McDermott the one that he can identify? Yes. Okay, what evidence is there that McDermott engaged in some sort of physical coercion? There is no, Lamar does not allege that McDermott engaged in physical coercion. Lamar alleges that McDermott, as the lead detective in this case, would have known about the physical abuse perpetuated by the detectives below him. And when he denied it at the motion to suppress, that he would have known about it and he should, that his testimony was accurate when he covered it up. Okay, now you are asking us to consider Weathers, this new case. Weathers is a case which appears may not be controlling in our matter because Weathers was able to exactly identify the officer that physically abused him. Correct. Additionally in Weathers, the report was not available to him at the time of the filing of his petition. So why do you think Weathers is worthy of citing? Weathers is not directly on point, I agree with that. But Weathers is the most recent published case with allegations of torture. Also the mode of abuse in Weathers is similar, the fact that the clothes were taken from the suspect. And also Weathers shows how the detectives work in teams, which is what is one of the really important things about this case. Because McDermott, the report shows that McDermott has this history of torture and of covering it up in court. And here, McDermott was the lead detective in the case. No, but as far as McDermott, the worst case scenario you can say is that he handcuffed him to a chair and maybe it was kind of tight. But that doesn't You know, without being able to identify the officer that physically coerced Mr. Lenore, we are dealing in ambiguous, uncertain territory. We don't have a named person that can be charged with this physical coercion abuse. Seems to me that's a highly relevant element in this case. In that way, this is similar to the Nicholas case. In Nicholas, the defendant claimed that he was abused by two detectives, that yes, they were named in the report. In this first post-conviction petition, he attached portions of the report and it was summarily dismissed. Nicholas subsequently learned the name of the good cop. It was Detective McLean. And the good cop didn't physically abuse Nicholas. But once he learned the name of this good cop who was in the report, he filed a successive post-conviction petition saying, now I know the name of this good cop. I saw a TV program and I'm able to identify him now. And the court found that that constituted cause and prejudice, finding the name of the good cop, not a cop that abused him. And that was enough to allow his petition to proceed. But the courts really look at is whether the defendant has ever had an opportunity to have a hearing into these allegations with the benefit of what we now know in the Egan report. And in Lenore's case, he hasn't had that hearing. He hasn't had an attorney to actually look into these claims and to do some investigation, now that we believe that there's this widespread history of physical torture and violence in the police department. We also know from the report that corruption begets corruption. The report has this notion of this trickle-down abuse, pointing out that common sense dictates that those who work under an abuser would not be concerned about their own mistreatment of suspects. The report brought this into the open, that McDermott was a member of Burge's torture crew. And now in this case, McDermott leads his own crew of detectives. At the time of Lenore's interrogation, McDermott's no longer a spring chicken on the force. He's in his 50s, he's been a detective for 28 years, and he's now working with detectives who are younger and larger, like Flannerty, who's 60 pounds heavier than McDermott. But he's still the same man. He's the same man who worked under Burge, but physically abused African-American suspects and covered it up by testifying that it didn't happen. Moreover, Lenore's interrogation fits into this pattern that we see over and over and over in the report and in recent cases. The detectives set the stage. They put the suspect in a cold cell. They deprive him of his clothes, deprive him of food and of sleep. And that's when the physical abuse occurs. Then we have a good cop come in and the suspect gives a confession. The officers employ this bad cop, good cop team interrogation technique. We see that in Nicholas, we see it in Patterson, and it's a technique that was used here against Lenore. Detective Flannerty and an unknown detective played the bad cops to McDermott's good cop. But previously, like I said, before the Egan report came out, Lenore did not have the evidence that he needed to support these claims. That McDermott had this history of abuse and of covering it up. No one to believe that this sort of abuse occurred. But now we know. This abuse has consistently been hidden away. The police have gone to great lengths to cover this up. McDermott has gone to great lengths to cover this up. As the Illinois Supreme Court stated in Rice, a physically coerced confession is never harmless error. Also, they said that satisfaction of the cause and prejudice test merely allows a petition to proceed. It does not relieve the defendant of his evidentiary burden in post-conviction proceedings. There is a need here in this case for further litigation into Lenore's claims. He's never had an attorney appointed to examine his claims after the Egan report has come to light. Because a physically coerced confession is never harmless error, Lenore has established prejudice. For these reasons, we ask that this Court reverse the Circuit Court's denial of leave to file and remand the petition for further proceedings under the Act, including the appointment of counsel. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court. I am Assistant State's Attorney Mary Needham, and I represent the people of the State of Illinois. It is our position that the trial court correctly deny defendant leave to file this successive petition. In our brief, we have set forth the many reasons that the denial was correct and the ways in which defendant's petition fell short of the hurdles he needs to overcome to advance a successive petition claim. I'm not going to, I'm not, we're not conceding any of those issues, but this morning I would just like to address my comments to what ultimately is a concern to all of us when there is a claim of coerced confession and that is the prejudice prong and is there evidence that this defendant statement that was admitted at trial was physically coerced. And it's our position that this record does not support that for two reasons. The petition doesn't support a claim of physical coercion. And number two, the record is clear that the statement was completely voluntary and not a product of physical coercion. Why do you say the record was clear? That's not what your opponent says, and she gives some specific examples as to why it's not as clear as you try to make it. Tell me why it's so clear. Well, defendant did have an attorney and there was a full litigated suppression motion and he made numerous allegations that went to a hearing and there was testimony and evidence. Well, in the first place, the allegations regarding Detective McDermott turned out to be untrue. Detective McDermott was not the detective who arrested defendant and brought him, put him in an interview room and handcuffed him with those handcuffs so tightly because Detective McDermott was elsewhere working on other aspects of the case at the time of defendant's arrest. Defendant was arrested by Detective Flaherty and defendant in his suppression. So is the fact that he got the names mixed up dispositive? You know, he says Flaherty, but he says McDermott, but it was really Flaherty, but somebody handcuffed his hands too tight. I mean, the fact that he got the names mixed up, is that your reason for saying that that should be totally discounted? No, but he's never said I got the names mixed up. He's never asserted in his post-conviction petition or his thing that I had it wrong, I had the wrong detective. And in any event, even if he would say that, the record would rebut it because we do have the testimony from Detective Flaherty regarding his actions. Counsel, I think we're maybe not asking the question in an artful way. His allegation is that somebody, Detective Flaherty or McDermott or somebody, cuffed him so tightly that his circulation was cut off. He made that allegation. What about that? Well, there was an opportunity for defendant to establish that at the suppression hearing. Well, the people move forward on proving that that did not occur. Defendant did not offer any evidence that that did occur. And, in fact, we have numerous statements from an ASA, Detective Flaherty, and defendant's own videotaped statement that said I haven't been mistreated. I was treated fine. He didn't make any complaints. There was no complaints to medical personnel after his arrest. What about your opponent's point, and I think it's a point well taken, that nobody wants to believe that people who are in police custody are being abused and coerced to give confessions. It's not something that civilized society wants to accept. So it's the likelihood of accepting that testimony is probably, at that time, it was less probable than it is now. So I think your opponent's point is a lawyer ought to be appointed to give him the opportunity to explore that because we now know that that's not as improbable as it once seemed. That's her argument, as I understand it. How do you respond to that? Well, and I acknowledge that we have these allegations that the Egan Report and the Torture Commission Report now show this was occurring. But what's missing in this case is a nexus between any of those allegations, those detectives, the time, the place, the similarity to defendant's situation in this case. We have an Egan Report that shows Detective McDermott was involved in an instance of abuse and lying about it in 1985. But that does not support any of the allegations defendant is now saying that Egan, I mean, pardon me, that McDermott was the leader, that he was number one, I mean, that he was directing all these people. In fact, the record rebutts that. The record shows, number one, that apparently Detective O'Connor was the primary detective. There were seven detectives working throughout the Chicagoland area trying to apprehend these four suspects. And so if the allegations are that Detective Egan was this person, then the evidence that he was relying on does not show that. And without any nexus. Where is Detective McDermott? I'm sorry, did I say? You said Egan. Oh, yes, I did, I did. I meant McDermott. McDermott, and there's no denying that that was a founded allegation from him, but this is not Area 2 or 3 in the Burge area. This is a different area, Area 4. There's nothing in the Egan Report that implicates Detective Flaherty or any of the other detectives that were involved in this case. So it's a stretch to say any time a Detective McDermott or anybody else had some kind of involvement in the case, that defendant should have been appointed an attorney to further investigate claims. And we do have a record of what McDermott's involvement was in this case, and that was he wasn't at the station until the afternoon when defendant was already cooperating with Detective Flaherty. Detective Flaherty spoke to defendant just a few hours after he was arrested, and defendant made admissions that Flaherty wrote in his police report, and he used information that defendant gave him to go find the other co-defendant and arrest him. And in the morning, a few hours later, about 11 o'clock, defendant was talking to ASA Gregorovic and Flaherty, and then it wasn't until the afternoon that Detective McDermott, he didn't take any statements. He was a witness for ASA Gregorovic's statements and interviews with defendant, and he did show defendant the other co-defendant McClellan's videotaped statement that defendant said he wanted to see, and then after he was present for defendant's videotaped confession. Ms. Needham, I go back to what about the allegations that he was, that they took his clothes off, one effect that made him undress and stay in the room unclothed for a number of hours. Somebody hit him with a phone book, the cuffing of the hands. Are you, you know, what about that? I mean, she's, your opponent says that that's sufficient, and although he later gave some statements saying that he was treated well, that was all part and parcel of this coercion and the fact that he was frightened of these detectives, and you're saying that even in light retrospectively of knowing that some of these things in other cases did occur, we should just ignore that, or if the record doesn't support that, how would the record support that, other than credibility here in which the judge says, I believe the detectives and I don't believe you. What else would the record say? Well, the record could, well, in the first place, we have a record of witnesses who said every time I saw the defendant, he wasn't handcuffed. That was Flaherty and A.S.A. Gregorovic. But they're the same people that are saying they didn't do the things that he's accusing them of doing. So other than their testimony, what else objectively would we find in the record that would support that? Well, and I would just ask, what objectively shows that that was not true? Because there's no allegations regarding A.S.A. Gregorovic or Flaherty in this case. There's no supporting documentation. And our Supreme Court has said there has to be something more than just an allegation. There has to be something from which a court can determine there is cause and there is prejudice. And I'm just focusing on the prejudice part right now, but I'm not conceding the cause part. But there is, the defendants never said, you know, I gave the statement because of this, or explained anything. He had an opportunity to rebut the evidence that none of this occurred, and he didn't do it. And I'd also like to note that in his first post-conviction petition, the defendant did not challenge his confession as coerced. He did claim that his attorney didn't do enough to investigate the claims. But he never claimed that his attorney stopped him from testifying at the suppression hearing. His claim was that his attorney stopped him from testifying at trial. So there was an opportunity for a defendant to rebut these claims, and he didn't do it. And even in his post-conviction pleadings, he hasn't offered any explanation of how of rebutting that testimony. He simply has restated his motion to suppress, substituted McDermott's name for Flaherty, I mean, put in Flaherty, as the detective who did it, for McDermott, and then attached the Egan report. And the Egan report doesn't have anything to do with A.S.A. Gregorovic and A.S.A. Lagerwal, who spoke to the defendant as well. And there was also, at the suppression hearing, there was photographic evidence that Detective Flaherty reviewed and said, this is how the defendant looked at the time of the line-up, which was, there was a line-up after defendant had already made admissions, but before he gave a videotaped statement, and he said he didn't see any injuries to defendant. But that evidence hasn't been included in the record, and that should be construed against defendant. If there was evidence that showed any kind of physical markings or physical beating, it would be included. And the absence of it suggests that these claims are, that have already been decided and litigated, just don't have the merit. Defendant's claims are a different time and place, and they're not identical to the other cases in the Egan report. And this case is different from Weathers for several reasons, because in Weathers, there was never, the defendant never had an opportunity to present his suppression, there was never a suppression hearing where he could present his claims of coercion, and he didn't have the report at the time that he filed his first post-conviction petition. And in Nicholas, also as a case, 1991, Area 3, the allegations the court found were strikingly similar to the abuse in the Egan report, as to the location, manner, method, participants, and the participants and their roles. And we just don't have that here. What we have is a claim that Flaherty handcuffed me tightly, and my proof is the Egan report, that shows McDermott one time did this. And I'm not condoning what McDermott did, but that evidence does not show the abuse in this case, For these reasons, we ask that this court to affirm the trial court's denial of the leave to file the successive petition. Thank you. Counselor, how do you pronounce your last name? Phelpe. Phelpe. Just quickly, three points in rebuttal. First about Weathers. Weathers filed his first post-conviction petition in 2009. That is after the Egan report was published in 2006. So the Egan report was out there. It was out in the world. He did not attach it to his first post-conviction petition. Also in Weathers, one of the other reasons I wanted to cite Weathers is because his allegation, that this claim was not raised in his direct appeal, and that was also not held to be a bar in any way for cause and prejudice for a successive petition. And it was not claimed at trial either. And again, that was not held to be a bar against cause and prejudice. What about his statement that he was treated well and, you know, we can completely, in the trial court, completely disregard that? I mean, he at some point made a statement that, you know, the police allowed him to have something to eat and they allowed him bathroom breaks. I mean, he made a whole statement around that. What about that? Well, he said he was given a slice of pizza after being held 24 hours, given a slice of pizza 30 minutes before his statement. But that a defendant who has been beaten doesn't tell the prosecutor that he has been beaten isn't unheard of. This is exactly what happened in Nicholas and exactly what happened in Weathers. And typically a defendant doesn't say anything because there's officers nearby, the same officers that did beat him. They're nearby or they're present or they just stepped out of the room. The police know how to avoid visual marks. We saw this in the report where there's a tactic of beating with newspaper or about the body or with phone books. The police know how to do this. Did he raise in his first post-conviction petition? In his first post-conviction petition, he claimed that his trial counsel failed to prepare for the motion to suppress and failed to conduct adequate investigation into his interrogation and prevented him from testifying. Your Honor, I don't have that petition in front of me at this moment. I know, but that's the gist of it. Correct. That's significantly different than what you're arguing now. I mean, if this is the preface of your argument now is very different from what he argued in that petition. If this is so important, why isn't this being raised now? Well, Your Honor, now he has the Eagan report to actually support his claims. But he would have known what happened to him. I mean, he didn't need a report to tell him that somebody beat him with a phone book or they did whatever they did. Either they did it or they didn't do it. And if they did it, he would have known. So my question is why wasn't that raised in the first post-conviction petition? Your Honor, in the first post-conviction petition, he was focused on trial counsel's ineffectiveness and what counsel didn't do for the motion to suppress. It still goes to the voluntariness. It's just talking about how counsel didn't thoroughly investigate his claims of abuse. He refers to the claims of abuse, but he doesn't bring them up again because he doesn't have anything additional to support it. In post-conviction, you need documentary evidence to support your claims. And he just didn't have that at that point for the first post-conviction petition. So he raised it as ineffective assistance of counsel, getting at the idea that counsel didn't investigate these claims, didn't listen to him, and prevented him from testifying to correct these factual inaccuracies that came up at the motion to suppress. Also, counsel alleges that McDermott was not the lead detective. McDermott was highly involved in this case. He ordered Flaherty to arrest my client, and he was involved in five of the seven interrogations, including being present for the videotaped statement. Flaherty testified that O'Connor was the primary detective, the first to sign to the case. But we don't know if primary is the same as lead. That's a factual question, and it's premature at this point. But what we do know is that O'Connor was not involved at all in any of these interrogations. He's never named during the motion to suppress as ever being there. He's never named during the trial as ever being there, just as being the first one on the scene. So whether you call it lead or primary, it's clear that McDermott is heavily involved here. He's ordering detectives around. He's present for the vast majority of these interrogations. And he's rather senior in terms of what we know about McDermott having been there for 28 years and Flaherty, who was only 35 years old at that point. If there are no further questions, we ask that this court reverse the circuit court style of leave to file and remand for further proceedings and the appointment of counsel. Thank you. Thank you, counsel. And I would like to announce at the beginning, Justice Liu will also be participating in resolution of this case. She obviously isn't here today, but she has read the material and will be listening to the tapes which you recorded today and will participate in the resolution of this case. Thank you, counsel. Court is adjourned.